UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JUSTIN SHERWOOD,                )
                                )
    Plaintiff,                  )
                                )           No. 5:16-CV-92-REW
v.                              )
                                )           OPINION & ORDER
COOK OUT, INC., et al.,         )
                                )
    Defendants.                 )

\*\*\* \*\*\* \*\*\* \*\*\*

Justin Sherwood (Plaintiff), initiated this putative individual and collective action against Defendant Cook Out, Inc., and one of its franchisee restaurants (collectively "Defendants" or "Cook Out") on behalf of himself and other Cook Out employees. DE 1 (Complaint); DE 55 (Second Amended Complaint). Plaintiff asserts violations of state and federal wage laws as well as an alternative KRS 446.070 theory. For the reasons fully explained below, the Court finds the current operative pleading deficient, dismisses the state law claims, but grants a limited period of discovery on the FLSA claim.

I.  **BACKGROUND**

Sherwood bases his claims on the following allegations:[1] From September through November 2014, Defendants employed Sherwood as a Manager in Training at the Richmond, Kentucky, Cook Out location. Defendants regularly scheduled Sherwood to work at least 50 hours per week. Plaintiff actually worked over 60 hours per week.

---

[1] Under the relevant standard, the Court assesses (and, here, recites) the facts in favor of and as alleged by Plaintiff. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The factual summary is from the Second Amended Complaint, the operative pleading, unless otherwise noted. *See* DE 55.

1

Cook Out failed to pay Sherwood 1.5 times his regular rate for hours he worked over 40. Sherwood "harbored no understanding" that he would not be paid time-and-a-half for overtime hours. Cook Out paid Sherwood $8 per hour, so-called "Appreciation Pay," for worked hours exceeding 52.5 in a given workweek. Sherwood contends such additional payments constituted "hours-based bonuses" that caused his salary to vary. Per Sherwood, such variance violates a proper "fluctuating workweek pay practice, which [ ] Defendants used here for Plaintiff[.]" DE 55 at ¶ 37.

Plaintiff alleges (as denominated) violations of the Fair Labor Standards Act ("FLSA"), the Kentucky Wage Payment Collection Law, and the Kentucky Remedies Law. DE 55 at ¶¶ 57–77. Defendants pursue Rule 12 dismissal of all claims. DE 55 (Motion). The motion stands fully briefed and ripe for review. DE 56 (Response); DE 59 (Reply).

### A. Dismissal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do[.]" *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys*, 684 F.3d at 608. Yet, courts need not accept "legal conclusion[s] couched as [ ] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[ ] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

## II. ANALYSIS

The FLSA requires every covered "employer" to pay its employees "not less than one and one-half times the regular rate" for all hours worked in excess of forty in a given workweek. 29 U.S.C. § 207(a)(1). The Sixth Circuit has not (post-*Twombly*) squarely addressed the standard for pleading a plausible FLSA overtime claim.[2] However, the Fourth Circuit recently summarized the majority view:

> [T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay.
> . . .
> [T]he standard . . . does not require plaintiffs to identify a particular week in which they worked uncompensated overtime hours. Rather, this standard is intended to require plaintiffs to provide some factual context that will nudge their claim from conceivable to plausible. . . . Thus, to state a plausible FLSA overtime claim, plaintiffs "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given

---

[2] *But see In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 905 F.3d 387, 406 (6th Cir. 2018) (noting that, for an FLSA minimum-wage claim, "Plaintiffs would be required to identify a particular workweek in which, taking the average rate, they received less than the minimum wage per hour").

3

> week. . . . A plaintiff may meet this initial standard by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility.

*Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) (citations and quotation marks omitted), *cert. denied*, 138 S. Ct. 635 (2018); *accord Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014); *Davis v. Abington Memorial Hospital*, 765 F.3d 236 (3d Cir. 2014); *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *Pruell v. Caritas Christi*, 678 F.3d 10, 13–15 (1st Cir. 2012). As a sister court explained: "The emphasis in all these cases is plausibility per *Twombly* and *Iqbal*, not the creation of a novel pleading requirement." *Anderson v. GCA Servs. Grp. of N. Carolina, Inc.*, No. 1:15-CV-37-GNS, 2015 WL 5299452, at *4 (W.D. Ky. Sept. 9, 2015). The Court considers Sherwood's allegations in light of these principles.

Plaintiff's claims flow entirely from the premise that Cook Out failed to comply with or meet the requirements for a "fluctuating workweek pay practice, which [ ] Defendants used here for Plaintiff[.]" *See* DE 55 at ¶ 37. Nonetheless, Sherwood urges that his complaint is sufficient without regard to his fluctuating workweek ("FWW") allegations. *See* DE 59 at 8–10. Sherwood also contends that, structurally, he had no obligation to plead an FWW violation. Finally, Sherwood contends that he has plausibly alleged FWW noncompliance and, consequently, an FLSA violation. Defendant contests each point. The Court addresses each argument in turn.

The Court must judge the pleading before it. Sherwood stakes his overtime theory on fluctuating workweek noncompliance by Cook Out. He stakes noncompliance on two allegedly unmet (or transgressed) required elements of the FWW model—one related to

Appreciation Pay and one related to the understanding between employer and employee. The Court thus must assess plausibility within the specific context of the theory Plaintiff espouses.

*FWW Framework*

Subject to certain requirements, the FWW structure (as an FLSA compliant pay system) allows employers to pay employees a "[f]ixed salary for fluctuating hours[,]" plus an overtime premium at "one-half" times the standard rate, "in addition to such salary"; this structure is one method of complying with the 1.5x regular rate payment generally required for overtime. 29 C.F.R. §§ 778.114 & 778.107 ("The general overtime pay standard in section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the . . . regular rate[.]"). Undergirding the FWW method is the idea that flat salary accounts for the 'time' aspect of 'time-and-a-half' for overtime. *See id.* ("Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate.").

*Non-FWW Pleading Sufficiency*

Sherwood, in arguing he pleaded a viable FLSA claim without regard to the FWW issues, ignores the complaint's clear terms. Plaintiff explicitly claimed that Cook Out "used" an FWW "pay practice[.]" *Id.* at ¶ 37. Sherwood, though disputing whether it was fixed, concedes that Cook Out paid him a salary. *See* DE 55 at ¶ 35 (discussing the "salar[y] of Plaintiff"). Further, Plaintiff alleges that Cook Out paid him $8, in addition to his salary, for certain overtime hours. *Id.* at ¶ 34. Sherwood is not claiming wholly *unpaid* overtime but *underpaid* overtime. *See, e.g.*, DE 59 at 15 ("Cook Out was paying a

5

salary, half-time for some overtime hours worked, and then an additional/time-based bonus payment for hours worked beyond 52.5 in a workweek[.]").[3] The FWW theory is the only plausible route Plaintiff alleges for entitlement to relief for such underpayments. *See* DE 59 at 8 (Cook Out "should have paid Managers 1.5 times their regular hourly rate for all hours worked beyond 40 in workweeks as overtime pay, rather than the lower overtime rate that it paid."). Sherwood pleads no valid non-FWW theory to explain his otherwise threadbare allegation that Cook Out, *e.g.*, failed "to pay proper overtime wages[.]" DE 55 at ¶ 39.

The foundation of any FLSA overtime claim is the plaintiff's "regular rate," which is "a rate per hour." 29 U.S.C. § 207; 29 C.F.R. § 778.109. "To calculate overtime pay, the Act requires employers to divide total pay by total hours to determine an employee's regular rate, and to multiply that rate by 150%. 'Total pay' takes on different meanings depending on each pay arrangement." *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 364 (6th Cir. 2019). Sherwood does not allege his (or any manager's) regular rate. Nor does Sherwood plead any facts from which the Court could begin to divine such rate—*e.g.*, approximate salary or total wages. *Pruell*, 678 F.3d at 15 ("Plaintiffs . . . presumably know how much they were paid as wages[.]").

Instead, Sherwood's allegations regarding pay adequacy largely are in the vein of "those borderline phrases that while not stating an ultimate legal conclusion, [are] nevertheless so threadbare or speculative that [they] fail[ ] to cross the line between the

---

[3] This—as well as the explicit FWW pleading—distinguishes the cases Sherwood points to as evincing leniency for FLSA pleading. *See, e.g.*, *Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1181 (E.D. Ky. 2016) (Plaintiff alleged that he "worked more than 75 hours per week without receiving **any** overtime pay." (emphasis added)). *This* case calls for an evaluation of *this* pleading.

conclusory and the factual." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (quotation marks omitted). For example, Plaintiff contends he "regularly worked" 40+ "hours per workweek without being paid all overtime wages required" and that he "was not paid 1.5 times his regular rate of pay for each hour over 40[.]" DE 55 at ¶¶ 31–32. These allegations are "little more than a paraphrase of the statute." *Pruell*, 678 F.3d at 13. Such bald conclusions are entitled to no presumption of truthfulness. *Cf. Landers*, 771 F.3d at 646 ("[P]laintiffs in these types of cases . . . should be able to allege **facts** demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." (emphasis added)). Thus, Sherwood failed to "nudge" any non-FWW theory "from conceivable to plausible[.]" *Hall*, 846 F.3d at 777; *see also Simpson v. Baskin*, No. 3:17-CV-01077, 2018 WL 1070897, at *8 (M.D. Tenn. Feb. 26, 2018) (dismissing complaint that alleged "a specific weekly and monthly rate of pay" but failed to "allege the hours that [plaintiff] worked per week or per month for that wage"), *report and recommendation adopted*, No. 3:17-CV-01077, 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018); *York v. Velox Expres, Inc.*, No. 3:18-CV-481-CRS, 2018 WL 4901213, at *3 (W.D. Ky. Oct. 9, 2018) (dismissing minimum wage claim where complaint lacked critical "factual details").[4]

---

[4] Sherwood's pleading differs from the Sixth-Circuit approved *Acosta* complaint. *See* 919 F.3d at 367. That filing alleged: "Defendants paid hourly employees a flat day rate or half-day rate for their shifts, resulting in a failure to properly count and properly compensate hours worked in excess of 40 in a workweek." *See Perez v. Min & Kim, Inc.*, No. 2:15-cv-1431-GCS-EAS, ECF No. 1 (Complaint). This precise allegation, ultimately proven, was the crux of the Circuit's liability finding. *Acosta*, 919 F.3d at 364 ("A salary that supposedly includes overtime pay but does not vary with actual hours worked cannot include 'overtime' as the Act defines it."). Here, Sherwood expressly alleges that his overtime pay **did** vary with hours worked. *See* DE 55 at ¶ 34.

7

Plaintiff did not need to plead his pay with "mathematical precision[.]" *Dejesus*, 726 F.3d at 90. Rather, recognizing that it was Sherwood's "memory and experience that" led him "to claim in federal court that" he was "denied overtime in violation of the FLSA[,]" he simply needed to "draw on those resources in providing" a complaint "with sufficiently developed factual allegations." *Id.* Plaintiff may[5] have done so with regard to his FWW theory, but he otherwise failed to plead a viable claim.

*FWW Pleading Obligation*

Sherwood further insists that, structurally, he was "not required" to allege an FWW violation to survive dismissal. DE 59 at 10. The Court, in case context, disagrees. The overtime regulations "define[ ]" the Act's requirements. *Acosta*, 919 F.3d at 364; *see also Highlander*, 805 F.2d at 647 ("[T]he **Act** permits [FWW] implementation." (emphasis added)). Further, the Supreme Court "explicitly approved of the fluctuating work week method of calculating the 'regular rate.'" *Id.* (citing *Overnight Motor Transp. Co. v. Missel*, 62 S. Ct. 1216, 1221 (1942)).[6] As the Fifth and Eleventh Circuits put it, "the fluctuating workweek method is merely one way to meet the FLSA's overtime requirements—it is not an exception to those requirements." *Garcia v. Yachting*

---

[5] Though, Cook Out could "lawfully . . . [start] with a fixed salary and a shift schedule and work[ ] backwards to compute hourly and overtime rates. To double check the employer's overtime math, a Department of Labor investigator would deduct a baked-in overtime premium like this from the salary before dividing that figure by total hours to figure out the regular rate." *Acosta*, 919 F.3d at 364. Thus, the ultimate survival of Plaintiff's claim hinges on the plausibility of his FWW violation allegations.

If Sherwood viably alleged an FWW violation, the resulting *effect* would supply the critical fact Plaintiff otherwise failed to allege: underpayment. The FWW "method of overtime compensation results in lower earnings per hour as the number of hours per week increases"; so too does the applicable 50% overtime premium. *Highlander v. K.F.C. Nat. Mgmt. Co.*, 805 F.2d 644, 647 (6th Cir. 1986). Thus, if Cook Out was not compliant with the FWW requisites, it likely would have been obliged to pay Sherwood time-and-a-half for each hour over 40, rather than a half-time premium alone.

[6] Indeed, *Missell* was foundational for the DOL's FWW regulation.

*Promotions, Inc.*, 662 F. App'x 795, 797 (11th Cir. 2016); *see Dacar v. Saybolt, L.P.*, 914 F.3d 917, 920 (5th Cir. 2018).[7] Sherwood, by explicitly claiming faulty FWW compensation (and pleading no other viable theory), effectively incorporated proof of an FWW violation as an element of his prima facie case. Thus, Sherwood needed to properly plead[8] an FWW violation.[9] The Court analyzes the substance of Plaintiff's FWW claim under the Rule 12 rubric.

*FWW Violation*

The FLSA authorizes FWW compensation subject to four requirements:

---

[7] At trial, Sherwood would thus bear "the burden of proving that [Cook Out] failed to properly administer the payments." *Garcia*, 662 at 797; *accord Dacar*, 914 F.3d at 924. The Court is not persuaded by either aged district court opinion Sherwood cites for the contrary rule. *See* DE 59 at 11.

[8] It simply makes logical sense that a plaintiff, acknowledging an employer's attempted adherence to undisputedly valid payment mechanics, must, at minimum, plausibly plead non-compliance with that rubric to clear the 12(b)(6) hurdle.

[9] If, alternatively, the Sixth Circuit determined that FWW compliance is an affirmative defense. The Court, given Plaintiff's anticipatory pleading, would still find substantive analysis proper. The Court is cognizant of the Sixth Circuit's general reluctance "to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013). However, an exception applies where "the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 599 (6th Cir. 2012), *overruled on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). "Here, [Sherwood]'s complaint [ci]ted [a DOL ruling] and preemptively alleged [facts relevant only to his arguments] to defeat [FWW reliance]." *Marsh v. Genentech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012); *see, e.g.*, DE 55 at ¶ 33–37. The Court infers intentional anticipation. Sherwood intentionally teed up the FWW issue and included a preemptive response. That is, Plaintiff, effectively, submitted the FWW theory for the Court's consideration within the 12(b)(6) rubric. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits. . . . If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." (internal citations and quotation marks omitted)). Thus, whether the FWW analysis is properly considered an affirmative defense or a base pleading requirement, pleading content justifies a substantive Rule 12 assessment. *See Marsh*, 693 F.3d at 555.

> (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed salary that does not vary with the number of hours worked (excluding overtime premiums); (3) the fixed salary at least equals the minimum wage; and (4) the employer and employee share a "clear mutual understanding" that the employer will pay the fixed salary regardless of the number of hours worked. 29 C.F.R. § 778.114(a).

*Hall*, 726 F. App'x at 320–21. Sherwood contends he validly pleaded violations of the second and fourth requirements, which he calls "the two prongs of the Fluctuating Work Week ('FWW') test at issue in this case." DE 59 at 2.

As to the fixed salary requirement, Sherwood claims Cook Out paid $8 for each hour exceeding 52.5 in a given workweek. DE 55 at ¶ 34. Plaintiff alleges such so-called "Appreciation Pay" made his salary variable. This claim is plainly at odds with DOL regulations and Sixth Circuit law. Indeed, § 778.114 **requires** payment for overtime "in addition to [a] salary." The fixed salary requirement excludes consideration of "overtime premiums[.]" *Hall*, 726 F. App'x at 321. Indeed, failing to pay the type of hours-linked overtime payments that Plaintiff decries is precisely what got the *Acosta* defendants in hot water. *See* 919 F.3d at 364 (finding that defendants went "astray" where they paid a salary "that supposedly includes overtime pay but d[id] not vary with actual hours worked").

Plaintiff's allegations conflate additional overtime payments, with **salary** variation. In other words, Sherwood suggests that FWW compliance requires a static total compensation package. This is legally inaccurate. *See Lalli v. Gen. Nutrition Centers, Inc.*, 814 F.3d 1, 6 (1st Cir. 2016) ("Section 778.114, by its plain language, requires a fixed salary for hours worked, not a fixed total amount of compensation for the week[.]"). Rather, what the FWW requires is that employees receive "a fixed amount for straight-time labor each week" *Id.* (citation and quotation marks omitted). "Straight-time pay," is

for "**non-overtime** hours." *Id.* "[T]he term 'salary,' of course, cannot be read so broadly as to encompass all forms of compensation[.]" *Id.* Section 778.114(a) explicitly sanctions "**extra** compensation, **in addition to such salary**," figuring same in the overtime compliance calculation. 29 C.F.R. § 778.114(a) (emphasis added). The $8 hourly payments are entirely consistent with the FWW requirement for "extra compensation for overtime work." *Hall* 726 F. App'x at 321; *see* 29 C.F.R. § 778.114 ("[T]he Act, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, **does not prohibit paying more**." (emphasis added)).[10] The fifty percent additional FWW premium is a floor, not a ceiling.

Thus, by the operative Complaint's own terms, Cook Out paid a salary designed to cover all straight-time hours and beyond. The Appreciation Pay kicked in only when an employee crossed the 52.5-hour threshold in a given week. Thus, that premium, obviously a premium untoggled until a worker moved deep into the overtime realm, would never impact the notion of straight-time or base compensation. The FWW method looks at the salary's fixture as to the straight-time component of pay. *See* 29 C.F.R. § 778.114(a) ("such fixed amount as straight time pay for whatever hours he is called upon to work"). Plainly, in Cook Out's model, the Appreciation Pay is, by its nature and design, in the category of an overtime premium. Unlike shift differentials, holiday pay, or similar bonuses, which by the shifts and calendar of a specific day or week might

---

[10] Practically, Sherwood is asking the Court to find that employers, otherwise complying with the FWW, that pay their employees **more** for overtime than they would perhaps otherwise be required to, thus, subject themselves to liability for overtime **underpayment**. In addition to being legally deficient, the argument makes little logical sense and is surely inconsistent with Congress's motivating FLSA purposes. *See* 29 U.S.C. § 202; *149 Madison Ave. Corp. v. Asselta*, 67 S. Ct. 1178, 1181 (1947) ("It was not the purpose of Congress in enacting the [FLSA] to impose upon the almost infinite variety of employment situations a single, rigid form of wage agreement.").

introduce straight-time variability, the pay premium here would affect only the overall compensation as to a worker's super-OT, 52.5+ hour time. The regulation plainly envisages that fixed salary means compensation "apart from overtime premiums[,]" stated in the plural, the employer may pay. 29 C.F.R. § 778.114(a). That element, thus, does not vary salary as understood under § 207 and the FWW regulation. *See* 29 U.S.C. § 207(e)(5)(excluding from "regular rate" definition "extra compensation provided by a premium rate paid for certain hours worked by the employee in any . . . workweek because such hours are worked in excess . . . of the employee's normal working hours or regular working hours").[11] Again, the reg demands a minimum "prescribed premium," but "does not prohibit paying more" as an additional overtime premium. 29 C.F.R. § 778.114(c). Plaintiff, thus, alleges a payment within the authorized parameters.

As to FWW prong 4, Sherwood contends he "harbored no understanding for him to not be paid 1.5 times his regular rate of pay for each hour over 40." DE 55 at ¶ 32. In other words, Plaintiff alleges that he did not understand that Cook Out would illegally underpay him. This circular allegation, in the FWW context, is essentially meaningless. FWW payments, as a compensation model, satisfy the 1.5x overtime requirement. *See Garcia,* 662 F. App'x at 797. Sherwood's claim that he lacked a clear understanding "regarding Defendants' payment practices" fares no better. DE 55 at ¶ 46. The Sixth Circuit recently addressed the scope of the mutual understanding predicate:

---

[11] *Cf.* 29 C.F.R. § 778.202(b) ("[W]here the employee's normal or regular daily or weekly working hours are greater or less than 8 hours and 40 hours respectively and his contract provides for the payment of premium rates for work in excess of such normal or regular hours of work for the day or week . . . the extra compensation provided by such premium rates, paid for excessive hours, is a **true overtime premium** to be excluded from the regular rate and it may be credited toward overtime compensation due under the Act.") (emphasis added).

> Although Plaintiffs argue that they did not understand every computational detail, such a perfect understanding was not required. *See* DOL Opinion Letter FLSA, 2009 WL 648995, at *2 (Jan. 14, 2009) ("[T]he Department's regulations do not require that the 'clear and mutual understanding' extend to the method used to calculate the overtime pay. Rather, 29 C.F.R. § 778.114 only requires that the employees have a clear and mutual understanding that they would be paid on a salary basis for all hours worked." (quotation marks and citation omitted) ); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 40 (1st Cir. 1999) ("The parties must only have reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not.").

*Hall*, 726 F. App'x at 323. Sherwood pleaded that Cook Out paid him a salary in "connection with a fluctuating workweek pay practice[.]" *See* DE 55 at ¶¶ 34, 37; *see also* DE 59 at 14 (arguing that the additional payments "caused Plaintiff's fixed salary to vary"). Sherwood does not claim (or allege any facts suggesting) that he doubted Cook Out would pay him the base salary regardless of how many hours he worked "whether few or many." 29 C.F.R. § 778.114(a); *see Garcia*, 662 F. App'x at 797 (The FWW method requires a clear mutual understanding "that the fixed salary is compensation for however many hours the employee may work in a particular week, rather than for a fixed number of hours per week. . . . An employee does not have to understand every contour of how the fluctuating workweek method is used to calculate salary, so long as the employee understands that his base salary is fixed regardless of the hours worked."). That is the precise scenario, a fixed base with variant hours.

What Plaintiff did or did not know is not a fact that Sherwood, the employee, should struggle to plead. Prior to the latest complaint amendment, Plaintiff had the benefit of Cook Out's previous 12(b)(6) motion, which articulated the FWW "clear and mutual understanding" requirement. DE 31-1 at 8. Despite the clear signal, and as to a fact uniquely within Sherwood's knowledge, Plaintiff now claims only that he broadly

13

failed to understand Cook Out's payment practices. This is concerning at the Rule 12 stage. *See Bailey v. Cty. of Georgetown*, 94 F.3d 152, 156–57 (4th Cir. 1996) (rejecting theory that "employees whose employer has adopted a fluctuating pay plan must understand the manner in which their overtime pay is calculated . . . or that the employer must secure written acknowledgements" of understanding "as contrary to the plain language of the FLSA and section 778.114").

*FLSA Sub-Conclusion*

Plaintiff's factual allegations need to "do more than create speculation or suspicion of a legally cognizable cause of action; they [need to] show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1965) (emphasis in original). Determining pleading sufficiency is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. Plaintiff's failure to flesh out his claims through two prior amendments is concerning. *Cf. Dejesus*, 726 F.3d at 90 ("[W]e would be less than candid if we did not register our concern about the failure of the plaintiff, through counsel, at least to attempt to amend her complaint to add specifics while the district court kept the door open for her to do so.").[12] In this specific context, a 2-month employee questions, wholesale, the payment practices of his former employer. He acknowledges receipt of overtime payments, but offers only conclusory,

---

[12] *See also Pruell*, 678 F.3d at 14 ("It is also telling that when the district court asked for more detail, plaintiffs' amendment offered the barest possible minimum . . . . *Cf. Kueter v. Rancourt*, 89 F.3d 823 (1st Cir. 1996) (unpublished table decision) (warnings about adequacy of original complaint relevant to assessing adequacy of amended complaint). Adequacy is not always a clear line; and when the district judge asks for more specifics, a serious effort to flesh out the complaint is fairly to be expected."). However, the Court recognizes that Sherwood has not, thus far, received *judicial* guidance on the adequacy of his FLSA claims.

statute-paraphrasing allegations that such payments were insufficient. The pleaded facts present essentially no grounds "to infer more than the mere possibility of misconduct[.]" *Iqbal*, 129 S. Ct. at 1950. Thus, the Court is strongly inclined to dismiss this claim.

Nonetheless, the Court will permit **limited** discovery on two topics: (A) Cook Out's actual payments[13] to Sherwood (and only Sherwood) and (B) Sherwood's knowledge of Cook Out's compensation framework. The Court's ruling here bows to several factors, including: (1) case stage and applicable burden; (2) scarcity of caselaw granting Rule 12 dismissal of FWW-tied overtime claims; and (3) lack of Sixth Circuit precedent addressing FWW claim pleading. Thus, and out of an abundance of caution, the Court gives Plaintiff an opportunity to gather and present some proof supporting Cook Out's non-compliance with the second and fourth FWW prongs. If preliminary discovery reveals a viable claim, Sherwood is entitled to proceed. Alternatively, if proof only confirms the Court's initial impression of this claim, Cook Out will not be unnecessarily burdened by full-blown discovery.

### III.   STATE LAW CLAIMS

Kentucky's overtime statute roughly tracks § 207(a), with one key exception. *See* KRS 337.285. The Commonwealth exempts "restaurant" employees from overtime requirements. *Id.* Plaintiff alleges that Defendants "operate restaurants[.]" DE 55 at ¶¶ 15, 17, 21, 23. Cook Out seeks dismissal of the state law claim based on this exemption. Plaintiff contends that he "carefully pled his [second] claim to fall under . . . KRS 337.020[.]" DE 59 at 19. Sherwood argues that KRS 337.020 does not exclude restaurant employees and, thus, it provides an independent cause of action for underpaid overtime.

---

[13] Including, in the context of documented hours, salary, overtime premiums, and any "appreciation pay."

DE 59 at 20. Alternatively, Plaintiff suggests that Kentucky's negligence per se codification, KRS 446.070, authorizes a claim for KRS 337.020 violations.

It is true that KRS 337.020 authorizes employee claims against an employer that fails to diligently pay "the full amount of [ ] wages due on each regular pay day." KRS 446.070 does permit suits, sometimes, for violations of Kentucky statutes.[14] However, Plaintiff's argument ignores a fundamental defect with these claims. For either theory, Plaintiff needed to plausibly allege unpaid wages that he was "due" under state law. This he failed to do.

Kentucky wages include, in relevant part: "any compensation due to an employee by reason of his or her employment, including salaries . . . [and] overtime pay[.]" KRS 337.010. In the Commonwealth, the statute that renders overtime "due" is KRS 337.285. *See Henderson v. Pieratt's, Inc.*, No. 5:17-CV-377-JMH, 2019 WL 1903398, at *7 (E.D. Ky. Apr. 29, 2019) ("KRS 377.285(1) is enforced through KRS 337.385[.]"). As discussed, Cook Out is exempt from that requirement and, thus, its employees are not entitled to such compensation under state law. *See* KRS 337.285(2)(b). Put differently, Plaintiff's allegation that Cook Out failed to pay "proper overtime wages . . . for all hours . . . over 40" does not plausibly allege a violation of KRS 337.020. Having failed to adequately plead a statutory breach, Sherwood likewise fails to state a valid KRS 446.070 claim. Consequently, the Court dismisses Plaintiff's second and third causes of action.

---

[14] Because KRS 337.020 provides its own remedy, Plaintiff cannot pursue a KRS 446.070 claim for such violations. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) (KRS 446.070 does not reach a statute that "prescribe[s] the remedy for its violation."); *id.* ("Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, [such] party is limited to the remedy provided[.]"). This finding applies as an alternative dismissal basis for Sherwood's third claim.

While Plaintiff may suggest he simply is trying to collect an FLSA liability via the Kentucky statutory scheme, that is not what the Complaint attempts. Rather, the pleading repeatedly invokes a Kentucky overtime obligation as the catalyst for the claimed wages due. Paragraph 69 provides: "The overtime wage provisions of the KWPCL and its supporting regulations apply to Defendants." Or consider paragraph 71: "Defendants' hours-based bonus payments violated the KWPCL and its fluctuating workweek overtime wage provisions." Undoubtedly, Plaintiff seeks to apply Kentucky overtime law to Counts II and III. This, because of the restaurant exemption, he may not do. The Court will not allow a bootstrapped FLSA claim, which clearly makes no effort to enwrap the class, to survive in the remaining collective action counts. Finally, even if the Complaint actually alleged the theory that Sherwood's response advances, the Commonwealth's precedent would slam the door. *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) ("Violations of federal laws and regulations and the laws of other states do not create a cause of action based on KRS 446.070."); *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006) ("The Kentucky General Assembly did not intend for KRS 446.070 to embrace the whole of federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations.").

## IV. CONCLUSION

For all these reasons and on the stated terms, the Court **ORDERS** as follows:

1. The Court, to the extent stated, **GRANTS** DE 56 **IN PART**, and otherwise **DENIES** the motion;

2. The parties have **75 days** to conduct limited discovery on the topics discussed;

3. Within **10 days** after the close of the limited discovery period, Defendants **SHALL** file a renewed Rule 12 motion addressing the implicated topics;

4. Plaintiff **SHALL** respond to Defendants' limited motion **within 21 days** of such filing;

5. Defendants **MAY** reply within **14 days** of Plaintiff's response;

6. The parties' filings **shall not** exceed 15 pages (exclusive of exhibits). To be clear, this means the defense is limited to 15 total pages (excluding exhibits) for its combined filings (motion and reply);

7. Finally, the Court, finding (per Rule 12(b)(2)) that need for resolution of the target issues prior to full-scale discovery provides good cause for delaying issuance of a broader scheduling order, and to promote Rule 1 and Rule 26(b)(1) values, **SUSPENDS** the parties' Rule 26(f)(1) meeting and report obligation pending resolution of the limited Rule 12 motion.

At the close of briefing, the Court will reevaluate the full record and, likely, evaluate the filings pursuant to Fed. R. Civ. P. 12(d). As a prerequisite to Rule 12(d) consideration: "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See also Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as

the losing party was on notice that she had to come forward with all of her evidence." (quoting *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2554 (1986)). This Opinion provides notice of the issues the Court intends to consider.[15]

This the 22nd day of August, 2019.

Signed By:
*Robert E. Wier* REW
United States District Judge

---

[15] The Court finds that the 75-day authorized period and supplemental briefing provide the parties a reasonable opportunity to address these discrete topics. *Cf. Petroleum Specialties, Inc.*, 69 F.3d at 105 ("Generally, before summary judgment can be granted against a party, [Rule] 56(c) mandates that the party opposing summary judgment be afforded notice and reasonable opportunity to respond to all the issues to be considered by the court."). However, the Court will consider any apt extension motions, supported by good cause.